**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALFONSO RIZZUTO, JR.,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:14-0020** |
| v. | : |
| | : **(JUDGE MANNION)** |
| **JOHN E. WETZEL, et al.,** | : |
| **Defendants** | : |

**MEMORANDUM**

**I. Background**

Plaintiff, Alfonso Rizzuto, an inmate confined in Rykers Island Jail, East Elmhurst, New York, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The complaint names the following officers and employees of the Department of Corrections ("DOC"), the Rockview State Correctional Institution ("SCI-Rockview") and the Camp Hill State Correctional Institution ("SCI-Camp Hill"); John Wetzel, DOC Secretary; James C. Barnacle, DOC Director of Office of Professional Responsibility; John Doe, DOC Central Office Abuse Hot Line; John K. Murray, DOC Central Office Deputy Secretary; Ms. Marirosa Lama, SCI-Rockview Facility Manager; Ms. Eaton, SCI-Rockview Security Captain; Mr. Yarger, SCI-Rockview Shift Commander; Scott Pasequale, SCI-Rockview Unit Manager; Mr. Walker, SCI-Rockview Sergeant;

Mr. Milhelcic, Mr. Makosky, Ms. Wales, Mr. Karichner, Mr. Spelas, and John Does, SCI-Rockview Correctional Officers; Dr. John Symons, SCI-Rockview Medical Director; Mr. Tipton, SCI-Rockview Physician Assistant; Mr. Phelps, SCI-Camp Hill Classification Counselor; and Mr. Wallance, SCI-Camp Hill Classification Supervisor. Id. Plaintiff's complaint seeks compensatory and punitive damages for allegations of failure to protect, retaliation, denial of access to courts and proper medical treatment. Id.

On October 26, 2015, a motion for summary judgment was filed on behalf of all Defendants, except Defendant Tipton. (Doc. 46). Subsequently, on November 9, 2015, Defendants filed a statement of material facts, brief in support and supporting exhibits. (Docs. 47-49).

On November 13, 2015, Plaintiff filed a motion for enlargement of time within which to file a brief in opposition to Defendants' motion for summary judgment. (Doc. 53). By Order dated November 18, 2015, Plaintiff was granted until January 15, 2016, within which to file his brief in opposition. (Doc. 54).

On December 14, 2015, Defendant Tipton filed a motion to dismiss Plaintiff's complaint (Doc. 57) and a brief in support of said motion on December 28, 2015. (Doc. 58).

By Orders dated January 7, 2016 and April 8, 2016, Plaintiff was granted

until April 29, 2016, to file a brief in opposition to Defendants' motions. (Docs. 60, 69). Plaintiff was advised that failure to file a brief in opposition to Defendants' motions would result in the motions being granted without a merits analysis as unopposed. See L.R. 7.6 ("Any party opposing any motion shall file a responsive brief ... [or] shall be deemed not to oppose such motion). Additionally, on May 5, 2016, the following remark was entered on the docket by the Clerk of Court, on behalf of Plaintiff:

> The Clerks Office has received numerous calls from Alfonso Rizzuto, Jr. about his Motion for Extension of Time with regard to his response deadlines to the Motion for Summary Judgment. Plaintiff claims he mailed this to the Court on 4/23/2016 and since we have not yet received it, he will mail a duplicate copy today 5/5/2016. Per his request, the Clerks Office agreed to place this remark on the docket to reflect his issue with mailing the Court. (bg) (Entered: 05/05/2016).

The time for filing a response has now passed and Plaintiff has failed to respond. Rizzuto has not communicated with the Court on this matter since his last filing on May 9, 2016.[1] Further, over five months have passed since Rizzuto's opposition to Defendants' motion for summary judgement and Defendant Tipton's motion to dismiss were due, and he has neither filed his opposition, nor requested an enlargement of time within which to do so. For the

---

[1] On May 9, 2016, Rizzuto filed a motion for appointment of counsel. (See Doc. 72).

reasons set forth below, the matter will be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

## II. Discussion

Under the Local Rules of this Court, the Plaintiff should be deemed to concur in Defendants' motions since he has failed to timely oppose the motions, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. **Any party who fails to comply with this rule shall be deemed not to oppose such motion.** Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a

dispositive motion without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09–1704, 2010 WL 3703808, *1 (M.D. Pa. Aug .26, 2010). In this case the Plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to Defendants' motions. Therefore, these procedural defaults by the Plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir. 1998).

Lease v. Fishel, 712 F.Supp.2d 359, 371 (M.D. Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id.

5

Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to Defendants' motion to dismiss and motion for summary judgment. This failure now compels us to apply the sanction called for under Rule 7.6 and deem the Plaintiff to not oppose these dispositive motions.

Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute. See Fed.R.Civ.P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). In so doing, the court must balance the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984.)

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a ... 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint .' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a pro se litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002); Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

### A. Analysis of the Poulis Factors

1. The extent of the party's personal responsibility.

A *pro se* plaintiff is responsible for his failure to comply with a court's orders. Emerson, 296 F.3d at 191. Plaintiff's brief in opposition to Defendants' motion for summary judgment was originally due on November 30, 2015, and his brief in opposition to Defendant Tipton's motion to dismiss was due on January 12, 2016. Plaintiff has been granted three enlargements of time, until April 29, 2016, to file briefs in opposition. (Docs. 45, 49). On May 5, 2016, per his request, the Clerk's Office placed a remark on the docket indicating that Plaintiff would be forwarding a copy of his brief in opposition to the Court. That was more than four months ago. At this point, the Court has been waiting for almost ten months for Plaintiff to move the litigation forward and can only conclude that he is personally responsible for failing to comply with Court orders.

2. The prejudice to the adversary.

The prejudice suffered by the party seeking sanctions is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v.

> Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir. 1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted).... However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693–94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259–60.

In this case, the Plaintiff's failure to litigate this case or comply with Court orders now wholly frustrates and delays the resolution of this action. In such instances, the Defendants are plainly prejudiced by the Plaintiff's continual inaction, and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

   3. A history of dilatoriness.

When one considers this third Poulis factor, the history of dilatoriness on

9

the Plaintiff's part, it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that " '[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response ... or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260–61 (some citations omitted). Here, the Plaintiff has failed to timely file pleadings, and has not complied with orders of this Court. Thus, the Plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response ... or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

    4. <u>Was the conduct willful or in bad faith?</u>

Under this factor, the District Court must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir. 1994). At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the Plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect an intentional

disregard for this case and the Court's instructions.

    5. <u>Effectiveness of sanctions other than dismissal</u>.

Cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See</u>, e.g., <u>Briscoe v. Klaus, 538 F.3d 252, 262–63 (3d Cir. 2008)</u>; <u>Emerson, 296 F.3d at 191</u>. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey Court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

    6. <u>Meritoriousness of the claim</u>.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the Plaintiff's claims. In our view, however, consideration of this factor cannot save this particular Plaintiff's claims, since the Plaintiff is now wholly non-compliant with his obligations as a litigant. The Plaintiff cannot

refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the noncompliant Plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, Plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action.

Plaintiff's complaint contains three separate areas of claims. (Doc. 1). First, Plaintiff alleges a failure to protect and retaliation claim against Defendants Wetzel, Barnacle, Murray, Lamas, Eaton, Yarger, Pasequale, Walker, Milhelcic, Makosky, Wales and Spelas. Specifically, he alleges he was assaulted by two inmates on January 10, 2012, while he was alone in his cell at SCI-Rockview, and all inmates were being released for dinner. Id. Plaintiff believes the named Defendants are responsible because Plaintiff put them on notice of inadequate staffing levels to prevent inmate on inmate assaults and thefts and the Defendants ignored him in retaliation for Plaintiff filing grievances. Id. Plaintiff also alleges that Defendant Tipton failed to include in

Plaintiff's medical record all the injuries Plaintiff sustained in the January 10, 2012 assault. Id.

Plaintiff's next alleges claims of retaliation, deprivation of property and denial of access to the courts against Defendant Karichner. Id. Plaintiff's claims arise out of a February 21, 2012 incident in which Defendant Karichner was transporting Plaintiff to another institution when he slammed on his brakes, causing Plaintiff to fly forward into a metal divider. Id. Additionally, Defendant Karichner allegedly took some of Plaintiff's legal property, thereby denying him access to the courts. Id.

Finally, Plaintiff claims that on February 9, 2010, Defendants Phelps and Wallance wrongly classified him in retaliation for filing grievances.

Defendants have presented competent summary judgment evidence which the Plaintiff has not rebutted[2], which demonstrates that Plaintiff's claim

---

[2] "A motion for summary judgment filed pursuant to Federal Rule of Civil Procedure Fed. R. Civ. P. 56 shall be accompanied by a separate, short and concise statement of the material facts...as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Because Plaintiff failed to oppose Defendants' statement of material facts, all facts contained therein are deemed admitted.

the he was wrongly classified in retaliation for filing grievances is barred by the statute of limitations[3]; Plaintiff's claims against Defendant Karichner, arising from the February 21, 2012 bus trip are barred by collateral estoppel[4]; Plaintiff's

---

[3]In Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (1975), the Supreme Court stipulated that there is no federal statute of limitations for civil rights actions. See also Owens v. Okure, 488 U.S. 235 (1989). In applying the statute of limitations to a civil rights action, a federal court must employ the appropriate state statute of limitations which governs personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n. 9 (3d Cir. 1996); King v. One Unknown Fed. Corr. Officer, 201 F.3d 910, 913 (7th Cir. 2000) (noting that the statute of limitations for a §1983 action and a Bivens action are both governed by the state statute of limitations for personal injury claims). The Wilson Court clarified that courts considering federal civil rights claims "should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250, (1989); Little v. Lycoming County, 912 F.Supp. 809, 814 (M.D. Pa.1996). Pennsylvania's applicable personal injury statute of limitations is two years. See 42 Pa. Cons.Stat. Ann. §5524(7); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993).
   Plaintiff was classified on February 9, 2010. (Doc. 48, Statement of Material facts at 5). He did not file the above captioned action until January 3, 2014. (Doc. 1, complaint). Clearly, he is beyond the statute of limitations.

[4]Collateral estoppel, also known as issue preclusion, "prevents parties from relitigating an issue that has already been actually litigated." Peloro v. United States, 488 F.3d 163, 174 (3d Cir. 2007). Collateral estoppel applies where: "'(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Peloro, 488 F.3d at 174–75 (alterations in original) (citation omitted).
   On August 24, 2012, Plaintiff filed suit with the Centre County Court of Common Pleas against Karichner for the same incident and allegations as is pending in the present matter. (Doc. 48, Statement of Material Facts at 4). On September 29, 2015, the Centre County Court of Common Please granted

access to the courts and property claims fail as a matter of law[5]; Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim[6]; and Defendant Tipton is entitled to dismissal on Plaintiff's Eighth

---

Karichner's motion for summary judgment. Plaintiff did not appeal. Id. Thus, Plaintiff is collaterally estopped from bringing any claim against Defendant Karichner arising from the February 21, 2012 bus trip.

[5]In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court held that in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm. Specifically, in Christopher v. Harbury, 536 U.S. 403 (2002) the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.

In the present action, Plaintiff generally alleges that Defendant Karichner took some of his legal property. (Doc. 48, Statement of Material Facts at 3). Because he fails to articulate any lost claim, resulting in an injury, his claim fails as a matter of law.

As to any issue regarding the taking of Plaintiff's property, such action does not constitute a due process violation if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517 (1984). The prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process. Durham v. Department of Corrections, 173 Fed. Appx. 154 (3d Cir. 2006). As such, his claim fails as a matter of law.

[6]The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the

official responsible for the prisoner's safety. Id. at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Actual knowledge can be proven circumstantially where the general danger was obvious. Farmer, 511 U.S. at 842.

Plaintiff makes general allegations of inmate on inmate assault and thefts on his block. (Doc. 1, complaint). However, he is without evidence to show that the named Defendants were actually aware of specific numerous inmate on inmate assaults and thefts due to under-staffing on Plaintiff's block. In fact, Plaintiff admitted at his deposition that he was a random victim and that he did not know the two assailants. (Doc. 48, Statement of Material Facts at 3). As such, Defendants are entitled to summary judgment as to Plaintiff's failure to protect claim.

Finally, to the extent that Plaintiff believes that the failure to add more officers to his block was in retaliation for filing grievances, for a retaliation claim, Plaintiff must prove : (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). Plaintiff has the initial burden of proving that the constitutionally protected conduct was a substantial motivating factor in the decision to discipline him. Id. Then the burden shifts to Defendant to prove by a preponderance of the evidence that he would have taken the same action anyway. Id.

While filing grievances is protected conduct, staffing decisions do not constitute adverse action, as they affect everyone the same. Moreover, there is no evidence of record of a causal connection between the two. Plaintiff's block was staffed with five officers. (Doc. 48, Statement of Material Facts at 3). The decision to assign five officers to Plaintiff's block was made before any grievance filed by Plaintiff. Id. Consequently, the record fails to establish that Plaintiff's filing of grievances was the motivating factor in staffing Plaintiff's block

Amendment medical claim.[7]

---

with no more than five officers. Accordingly, Defendants are entitled to summary judgment.

[7]In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives

---

does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

> Rizzuto's entire claim against Defendant Tipton is as follows:
>
> On 3/26/12 SCI Rockview Grievance # 407127 I reviewed my medical records at SCI Laurel Highlands hospital prison. Dr. John Symons medical director at SCI Rockview and PA Tipton did not note all injuries noted above Grievances I brought to their attentions while at SCI Rockview in my medical records all listed in above Grievances for robbery-assaults, etc. Denials medical care and or proper medical care from 1/10/12 incident through 2/21/12 transfer out SCI Rockview. Grievances filed 404129 SCI Laurel Highlands 2/11/12 against SCI Rockview, Grievance # 412732 SCI Laurel Highlands, Grievance 413328 SCI Laurel Highlands, Grievance 406561 SCI Laurel Highlands.

(Doc. 1, complaint at 15). Rizzuto lists over 70 alleged injuries and conditions that he purportedly sustained in the incidents occurring on January 10, 2012 and February 21, 2012. (See Doc. 1, complaint at 18). Rizzuto does not specify which of the plethora of "injuries" allegedly were omitted from the medical records. He merely alleges that all of the aforementioned "injuries" were not noted in the records. Id. However, assuming, without deciding, that Plaintiff's medical needs were serious in the constitutional sense, Plaintiff makes no allegations that Defendant Tipton intentionally refused treatment for any of Plaintiff's alleged injuries. At best, Plaintiff's allegations reflect a disagreement with the way in which Defendant Tipton recorded Plaintiff's "injuries". However, such disagreement does not serve as a predicate to liability under §1983. See, White, 897 F.2d at 108-110 (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there is no allegation in the complaint that Defendant Tipton intentionally withheld

### B. <u>Balancing of the Poulis Factors</u>

In balancing the <u>Poulis</u> factors, no single factor is dispositive, Ware, 322 F.3d at 222, and not all of the factors need be satisfied in order to dismiss a complaint. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). It is clear that, following a full analysis of the factors, the majority of the six factors weigh heavily in favor of Defendants and dismissal of the action for failure to prosecute. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0020-1.wpd

---

medical treatment from Plaintiff in order to inflict pain or harm upon plaintiff. Farmer, supra; Rouse, supra. As such, Rizzuto has failed to state an Eighth Amendment claim upon which relief may be granted and his complaint will be dismissed.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Since it is clear from Plaintiff's complaint, that Defendant Tipton was not involved in Plaintiff's medical care beyond recording Plaintiff's "injuries" in his medical record, and Plaintiff merely disagrees with the way such "injuries" were entered into the medical record, the Court finds that amendment on these claims would be futile. Moreover, it is unnecessary to permit further amendment when granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir.2004).